**UNITED STATES BANKRUPTCY COURT**
**Eastern District of Virginia**
**Richmond Division**

In re:
Marian Leah Baker,                                    Case No. 17-32061-KLP
    Debtor.                                              Chapter 13

## MEMORANDUM OPINION

The chapter 13 trustee (the "Trustee") has objected to confirmation of the chapter 13 plan (the "Plan") filed by Debtor Marian Leah Baker (the "Debtor"). The Trustee's objection (the "Objection") claims that the Plan fails to provide that "all of the Debtor's projected disposable income . . . will be applied to make payments to unsecured creditors under the plan," as required by § 1325(b)(1)(B) of the Bankruptcy Code, 11 U.S.C. § 1325(b)(1)(B).[1]

The issue before the Court is what portion of the income of the Debtor's non-filing spouse (the "Spouse") should be included in Debtor's projected disposable income and used to make payments to unsecured creditors. Specifically, the Court must determine the extent to which the Debtor is entitled to claim a "marital adjustment" on line 13 of Official Form 122C-1 ("Form 122C-1").

The Trustee asserts that the Debtor has improperly reduced her projected disposable income by using the marital adjustment to exclude amounts paid by the Spouse on (1) a mortgage for which he solely is liable, and (2) other debts owed only by the Spouse. Although the mortgage debt is

---

[1] Subsequent references to the Bankruptcy Code are to 11 U.S.C. §§ 101-1532.

an obligation of the Spouse only, the Debtor and her dependent reside with the Spouse in the property securing the mortgage indebtedness. In response to the Objection, the Debtor has agreed to forego a portion of the disputed marital adjustment but disagrees with the Trustee's assertion that she may not exclude the amounts representing her Spouse's mortgage payments.[2]

## **Findings of Fact**

The parties have elected to submit stipulations of fact in lieu of conducting an evidentiary hearing. The stipulations are as follows:

1. The income is correct on lines 2, 4, and 9 of form 22C[3] for Debtor and non-filing spouse.

2. The Household size consists of 3 individuals.

3. The debtor and non-filing spouse were married to each other in 2010.

4. Debtor's child is not the biological child of the non-filing spouse.

5. The Non-filing spouse purchased the residential home, in 2005, prior to the marriage with the debtor.

6. The Non-filing spouse's first and second mortgages are in non-filing spouse's name only and were incurred in 2005.

7. Only the Non-filing spouse's name is on the deed of the residential home.

8. The Debtor and her child reside in the non-filing spouse's home along with nonfiling spouse.

---

[2] The Debtor has conceded that payments attributable to vehicles and other obligations do not constitute permissible marital adjustments.
[3] Now known as Form 122C-1.

9. The residence is the debtor's and her child's only place of residence and shelter.

10. The Debtor's non-filing spouse has two vehicles.

11. The Debtor and her child ride in non-filing spouse's vehicle and Debtor drives one vehicle.

12. The Debtor has no vehicle in her name.

13. The Debtor has no vehicle loan in her name.

14. The Debtor's non-filing spouse has debt, credit cards, etc, that are in his name only.

15. Debtor's non-filing spouse used that debt in part for household needs and things for the benefit of debtor and her dependent.

16. The Debtor and non-filing spouse file joint taxes.

17. The Debtor and non-filing spouse pool money and use it to pay bills and fund household.

18. The Debtor and non-filing spouse have a joint checking account.

## Conclusions of Law

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Order of Reference of the U.S. District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).[4]

Section 1325(b)(1)(B) of the Bankruptcy Code states that if the trustee or an unsecured creditor objects to confirmation, a chapter 13 plan must provide that all of a debtor's projected disposable income be used to pay

---

[4] "Core proceedings include, but are not limited to . . . confirmations of plans." 28 U.S.C. § 157(b)(2)(L).

3

unsecured creditors.[5] "Disposable income" (which largely determines "projected disposable income")[6] is calculated after ascertaining the debtor's Current Monthly Income ("CMI") and adjusting it by certain amounts not at issue here. 11 U.S.C. § 1325(b)(2). CMI is calculated by using a two-part formula found in § 101(10A) of the Bankruptcy Code. The first component of CMI includes income received by the debtor and, in a joint case, the debtor's spouse.[7] The second component of CMI includes any amount "paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents . . . ."[8] Thus, a non-filing spouse's income is included in CMI only to the extent it is paid for the household expenses of the debtor and the debtor's dependents.

Form 122C-1, entitled "Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period," implements the language of § 101(10A) by permitting a debtor to take a "marital adjustment" if the debtor is married and the debtor's spouse is not a joint debtor in the

---

[5] Section 1325(b)(1)(B) provides that:
> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

"Applicable commitment period" is defined in subsection (b)(4).

[6] *See Mort Ranta v. Gorman*, 721 F.3d 241, 251 (4th Cir. 2013) ("[A] debtor's 'projected disposable income' is based on the debtor's 'disposable income,' give or take any adjustments necessary to account for foreseeable changes in that income.").

[7] § 101(10A)(A).

[8] § 101(10A)(B).

4

case. Line 13 of Form 122C-1 instructs a debtor who is married and filing individually to designate the amount of the non-filing spouse's income "that was NOT regularly paid for the household expenses of [the debtor] or [the debtor's] dependents . . . ." That amount constitutes the marital adjustment that, when applied, reduces a debtor's CMI. In the present case, the Debtor claimed a marital adjustment of $1200 for her "[h]usband's First and Second Mortgage."

A marital adjustment reduces the amount of a debtor's CMI and is significant in a chapter 13 bankruptcy case for two primary reasons. The term of a debtor's plan is determined by comparing CMI to the median family income in the debtor's state of residence. If CMI multiplied by twelve equals or exceeds the median family income for the state, the debtor's plan must be for a term of five years.[9] In addition, if CMI multiplied by twelve equals or exceeds the median family income for the state, the debtor must complete Official Form 122C-2, "Calculation of Your Disposable Income" ("Form 122C-2).[10] That form modifies CMI by, among other things, adjusting a debtor's expenses through the application of the Internal Revenue Service's

---

[9] 11 U.S.C. 1325(b)(4). Part 3 of Form 122C-1 is entitled "Calculate Your Commitment Period Under 11 U.S.C. § 1325(b)(4)." The marital adjustment, as determined on line 13 of Form 122C-1, is subtracted from a debtor's line 11 "average monthly income" on line 19 of Form 122C-1, resulting in the determination of "current monthly income" (line 20a) and, when multiplied by 12, the "current monthly income for the year" (line 20b). If the current monthly income for the year is less than the median family income for the debtor's state and household size, the applicable commitment period is three years. Otherwise, the commitment period is five years. In this case, although the Debtor calculated the marital adjustment on line 13, she did not deduct it on line 19. *See* n.10, *supra*.
[10] 11 U.S.C. § 1325(b)(3).

5

national and local standards, as required by Bankruptcy Code § 707(b)(2)(A) and (B).

Here, the Debtor has not attempted to qualify for a commitment period of less than five years;[11] rather, she is apparently excluding a portion of her Spouse's income from her calculation of CMI solely to avoid having her disposable income determined under § 707(b)(2)(A) and (B).[12] Be that as it may, the Court will confine its ruling to the issue presented; i.e., whether the adjustment on line 13 of Form 122C-1 for her Spouse's mortgage payments is proper.

---

[11] The Court takes judicial notice of the Debtor's Form 122C-1 (Docket 1) and Plan (Docket 2). In Part 2 of Form 122C-1, entitled "Determine How to Measure Your Deductions from Income," a debtor's current monthly income is calculated by reducing a debtor's average monthly income by the line 13 marital adjustment, the result being recorded on line 14. In Part 3 of Form 122C-1, entitled "Calculate Your Commitment Period Under 11 U.S.C. § 1325(b)(4)," the marital adjustment, as determined on line 13, is subtracted from a debtor's line 11 "average monthly income" on line 19 of Form 122C-1, resulting in the determination of "current monthly income" (line 20a) and, when multiplied by 12, the "current monthly income for the year" (line 20b). In this case, there is an inconsistency between lines 14 and 19 in Form 122C-1 in that the marital adjustment claimed on line 13 is deducted on line 14 but is not deducted on line 19. As a result, the box in the upper right corner of page 1 of Form 122C-1 is checked to indicate that "[d]isposable income is not determined under 11 U.S.C. § 1325(b)(3)" and "[t]he commitment period is 5 years." The Plan provides that monthly payments will be made over a 60 month period.

[12] The provisions of § 707(b), commonly known as the "means test," establish a formula for calculating an above-median income debtor's allowable expenses. Section 707(b)(2)(A) provides, in part:

> (ii)(I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of a debtor in a joint case, if the spouse is not otherwise a dependent.... Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

11 U.S.C. § 707(b)(2)(A)(ii)(I).

When interpreting a provision of the Bankruptcy Code, the Court must first look to the language of the statute itself. *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 69 (2011). The statutory language at issue is § 101(10A)(B)'s provision that CMI includes amounts "paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents . . . ." Under the plain language of the statute, if the Spouse's mortgage payment is either not a "household expense" or is not an expense "of the debtor or the debtor's dependents," the payment may properly be excluded from the Debtor's CMI.

At least one court has pointed out that "expenses" for purposes of § 101(10A)(B) does not include payments on debts because the language of § 707(b)(2)(A) specifically distinguishes "expenses" from "payments on debts." In *In re Hall*, 559 B.R. 463 (Bankr. S.D. Tex. 2016), the court stated that "§ 707(b)(2)(A)(ii) is unequivocal that monthly expenses of the debtor shall not include any payments for debts." *Id*. at 470.[13]. The court noted that while payments made on secured debts are a deduction from CMI pursuant to § 707(b)(2)(A)(iii), they are "a deduction that is distinct from the deduction of household expenses." *Id*. After concluding that future payments made on secured debts are not "expenses" and thus cannot be "household expenses" to

---

[13] "Put simply, payments toward debts are not expenses as contemplated by § 101 (10A)." *In re Hall*, 559 B.R. 463, 470 (Bankr. S.D. Tex. 2016).

7

which a non-filing spouse is contributing, the court held that the debt payments could be deducted as a marital adjustment. *Id.*[14]

In *Hall*, the disputed payments were made on vehicles titled only in the non-filing spouse's name. This prompted the court to consider the possibility of "double dipping," i.e. allowing the debtor to claim both a marital adjustment for a payment made by her non-filing spouse and an ownership/secured debt payment deduction. The court held that the debtor

---

[14] Even if one were to determine that a payment toward a claim secured by a debtor's home is an "expense," one may nevertheless find that the payment is not a "household" expense. Exactly what constitutes a "household expense" is not altogether clear, because the term is not defined in the Bankruptcy Code. Some courts have looked outside the language of the Bankruptcy Code to conclude that mortgage payments made on a debtor's principal residence constitute household expenses. The court in *In re Toxvard*, 485 B.R. 423 (Bankr. D.Col. 2013) utilized Black's Law Dictionary's definitions of "household" ("[a] family living together . . . . A group of people who dwell under the same roof") and "expense" ("[a]n expenditure of money"), Black's Law Dictionary (9th ed. 2009), to find that a payment toward a mortgage on a home occupied by the debtor is a household expense. *Id.* at 435, nn.46, 47. In *In re Clemons*, No. 08-82968, 2009 WL 1733867 (Bankr. C.D. Ill. June 16, 2009), the court looked to the "current expenditures" listed in Schedule J and the National and Local Standards issued by the Internal Revenue Service as a guide in concluding that "mortgage related expenses and rent payments are unquestionably encompassed within the term, along with food, clothing, utilities, car payments, and insurance." (But also stating that determining the amounts regularly paid for a debtor's household expenses is a "fact-specific inquiry.") *Id.* at *4. Yet, it stands to reason that not every expenditure of any family member must be considered a "household expense." And, given the inclusion of the qualifying term "household" in §101(10A)(B) and its omission in §707(b)(2)(A)(ii) (and in Schedule J), it also stands to reason that there are regular expenditures of a debtor that Congress does not consider to be "household" expenses. When a word is not defined by statute, it is normally given its ordinary meaning. *Smith v. United States*, 508 U.S. 223, 228 (1993); *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 861 F.3d 502, 509 (4th Cir. 2017); *Universal Mar. Serv. Corp. v. Wright*, 155 F.3d 311, 319 (4th Cir. 1998). Although one would ordinarily consider the cost of providing shelter for a family to be a household expense, it is worth noting that the regulations of the Internal Revenue Service (the Agency that publishes the National and Local Standards applicable to above-median debtor's allowable expenses) issued to determine whether a taxpayer may be considered the head of a household provide that:

> [t]he expenses of maintaining a household include property taxes, mortgage interest, rent, utility charges, upkeep and repairs, property insurance, and food consumed on the premises. Such expenses do not include the cost of clothing, education, medical treatment, vacations, life insurance, and transportation.

Treas. Reg. § 1.2-2(d). This regulation does not include payment of mortgage principal as a household expense.

would not be entitled to claim ownership and secured debt payment deductions on Form 122C because "she makes no monthly payments on debt secured by vehicles she does not own." *Id*. at 471 (citing § 707(b)(2)(A)(iii)). Similarly, in this case, the Debtor cannot "double dip" by claiming both the marital adjustment and secured debt payment deductions because she has no secured debt obligation in connection with the Spouse's mortgage debt. This Court adopts the rationale of *Hall*, both its conclusion that "payments toward debts are not expenses as contemplated by § 101(10A)" and its double dip analysis.

Alternatively, even if the Spouse's mortgage payments were to be considered "household expenses," the marital adjustment would still be allowed because the mortgage payment expenses are not expenses "of the debtor or the debtor's dependents." The Spouse purchased the residential home before marrying the Debtor, the residence is owned solely by the Spouse, and only he is obligated to make payments on the mortgage indebtedness.

A number of courts, after determining that mortgage expenses are "household expenses" under § 101(10A), have considered whether those mortgage payments constitute expenses "of the debtor or the debtor's dependents" and may thus be excluded from a debtor's CMI when, as here, the debtor's non-filing spouse is the only one liable on the mortgage.[15] Some

---

[15] *See* W. Homer Drake, Jr. Paul W, Bonapfel, Adam M. Goodman, Chapter 13 Practice & Procedure § 8:70 (June 2017) for a comprehensive compilation of cases.

9

courts adhere to a "household-centric" approach and hold that when the debtor benefits from a non-filing spouse's mortgage payments, the payments must be included in the debtor's CMI. *See, e.g., In re Trimarchi*, 421 B.R. 914, 922 (Bankr. N.D. Ill. 2010). Other courts have adopted a "debtor-centric" approach, concluding that when a debtor does not possess an ownership interest in the home and is not liable for the mortgage indebtedness, the payments may be excluded from the debtor's CMI.

In this Court's view, the statutory language of § 101(10A), both in wording and context, supports the application of a debtor-centric approach in this case. To disallow the marital adjustment solely on the basis that the Debtor and her dependent receive an indirect benefit from the Spouse's mortgage payments would lead to an artificially inflated monthly disposable income calculation and would deprive the Spouse of the income needed to make the mortgage payments that only he owes.[16]

The facts in *In re Toxvard*, 485 B.R. 423 (Bankr.D.Col.2013), are similar to the facts in this case. There, the chapter 13 trustee objected to a debtor's marital adjustment, claiming that it was overstated for the purpose of reducing the debtor's household income to below the median. The debtor resided with her non-filing spouse in a home acquired by the non-filing

---

[16] The Trustee contends that this Court adopted the "household-centric" approach in *In re Paliev*, No. 11-17647-BFK, 2012 WL 3564031 (Bankr. E.D. Va. August 17, 2012), thereby establishing a precedent for its applicability in this case. The Court disagrees. The only contested marital adjustment disallowed by the Court in *Paliev* was the non-filing spouse's contribution toward the debtor's dependent's 529 college savings plan, an expense benefitting only the dependent. *Id*. at *7-8. *Paliev* is factually distinguishable, and its legal analysis is not inconsistent with the ruling in this case.

10

spouse before the marriage and owned solely by the non-filing spouse. The court determined that in order to resolve whether a household expense is an expense "of the debtor," it should first consider whether it is solely the debtor's expense, solely the non-filing spouse's expense or a joint expense. *Id.* at 436. It held that an expense that was solely the non-filing spouse's expense would be entirely deductible. *Id.*

> If a household expense is the Debtor's sole expense, then the Debtor must include [the non-filing spouse's] entire payment of such expense in her calculation of disposable income. If a household expense is [the non-filing spouse's] sole expense, then the Debtor may deduct the entire expense from her calculation. If a household expense is a joint obligation, then the Debtor must include [the non-filing spouse's] payment of such expense in her calculation, but only to the extent [his] payment satisfies the Debtor's share of the obligation. Absent evidence to the contrary, this amount shall be fifty percent of the total expense. The Court finds that such an apportionment best satisfies the plain meaning of the statutory definition of current monthly income whereby the Debtor's income must be increased by the amount [the non-filing spouse] regularly contributes for the household expenses of the Debtor.

*Id.*[17]

The court in *Toxvard* considered the implications of *Ransom v. FIA Card Servs., N.A.*, where the Supreme Court held that a debtor may not

---

[17] In *Toxvard*, the court's decision to apply the debtor-centric approach was influenced by *In re Shahan*, 367 B.R. 732 (Bankr. D. Kan. 2007). In that case, the court held that payments made on mortgage and car loans by a non-filing spouse who had acquired the home and car before the marriage were not the expenses of the debtor. In a subsequent decision by the same court, *In re Vollen*, 426 B.R. 359 (Bankr. D. Kan. 2010), mortgage payments made by a non-filing spouse toward a home owned solely by the non-filing spouse were excluded from the debtor's marital adjustment because the home was acquired during the marriage, a distinction the court found sufficient to warrant a different result. *Id*. at 373. This Court needn't consider whether *In re Vollen* was correctly decided, because the distinguishing facts in *Vollen* are not present in the case at bar. It is generally recognized, however, that determining the amount a non-filing spouse regularly contributes to household expenses of the debtor or the debtor's dependents is fact-specific and subject to interpretation. *See In re Sale,* 397 B.R. 281, 287 (Bankr. M.D.N.C. 2007).

11

deduct loan or lease expenses under § 707(b)(2)(A)(ii) if the debtor does not own a vehicle on the date of filing.  In *Toxvard*, the court pointed out that were it to deny the marital adjustment for mortgage payments the debtor is not obligated to pay, *Ransom* would compel "[a]n outcome where the Debtor may declare her non-filing spouse's mortgage payment as her income, but is unable to deduct the mortgage payment," something the court found to be "an absurd result." *Toxvard*, 485 B.R. at 438.

Another court, in finding that a debtor was entitled to a marital adjustment for her non-filing spouse's mortgage payment when the house in which she and her spouse resided was owned by the spouse solely and only the spouse was liable for the mortgage payments, concluded that if "the expenses of a nonfiling spouse are to be included in Current Monthly Income so long as they vaguely benefit the debtor or her dependent, the distinction between a single and joint filing is unnecessary." *Sturm v. U.S. Trustee*, 455 B.R. 130, 137 (N.D. Ohio 2011).  The court in that case instructed that:

> the only questions identified by the statute as relevant for purposes of determining whether a marital adjustment may be claimed are the identity of the payment's recipient and her relationship to the obligation for which payment is expended, not the source of the payment or the benefit it produces.  The statute's generic reference to "any entity" is consistent with this debtor-centric construction. 11 U.S.C. § 101(10A)(B).
>
> This qualification on Current Monthly Income is not mere semantics, but is instead necessary to render the statutory framework coherent, and to ensure fidelity to Congress's purpose for adopting the means-test: to ensure "debtors who *can* pay creditors *do* pay them." *Ransom,* 131 S.Ct. at 721 (emphasis in original).  Without so qualifying Current Monthly Income,

12

thirteen words of the statute are rendered meaningless ("The term 'current monthly income' ... includes any amount paid by any entity other than the debtor ... on a regular basis for the household expenses of the debtor or the debtor's dependents (*and in a joint case the debtor's spouse if not otherwise a dependent*)...." 11 U.S.C. § 101(10A)(B) (emphasis added)).

*Id*. at 136-37.[18] In addition to pointing out that the language of § 101(10A)(B) is incompatible with denying the marital adjustment attributable to the non-filing spouse's mortgage payments, the court noted that including the mortgage amount in the debtor's CMI would effectively treat the debtor as if she were contractually liable for her non-filing spouse's mortgage payment while denying her the deduction for future payments on the secured debt, which her husband could claim in a joint filing. *Id*. at 137.[19]

---

[18] Although the court in *Sturm v. U.S. Trustee,* 455 B.R. 130, 137 (N.D. Ohio 2011), was addressing a motion to dismiss a chapter 7 filing for abuse pursuant to 11 U.S.C. § 707(b), the court recognized the similarity between the forms calculating the marital adjustments in chapter 7 and chapter 13. 455 B.R. at 137-38.

[19] Similar concerns were expressed by the court in *In re Clemons*, No. 08-82968, 2009 WL 1733867 (Bankr. C.D. Ill. June 16, 2009), a case decided prior to *Ransom v. FIA Card Services, N.A.,* 562 U.S. 61 (2011). In *Clemons*, the court concluded that a debtor was entitled to claim a marital adjustment for mortgage-related expenses for which she was not contractually liable. The court found that "[b]ased on the language of the statute, contributions [under §101(10A)(B)] are limited to amounts paid for expenses actually incurred by a debtor or a dependent." *Id*. at *4. The court observed that as an above-median debtor, the debtor's expense deductions would be determined pursuant to § 707(b)(2), limiting her to the applicable local standard deduction for mortgage/rent expense. Because she was not contractually liable to make the mortgage payments, she would not be entitled to deduct the higher payments on the secured claim, which would have resulted in an artificially inflated disposable income amount. *Id*.

*Sturm*, *Clemons,* and *In re Hall*, 559 B.R. 463 (Bankr. S.D. Tex. 2016), demonstrate that interpreting §101(10A)(B) to permit the deduction of a non-filing spouse's monthly payment obligation on a secured debt, when (1) the payment is not an obligation of the debtor or the debtor's dependent and (2) the debtor has no interest in the property securing the debt, is compatible with the remainder of the statutory scheme, including §707(b)(2)(A). "Statutory construction is a 'holistic endeavor. . . .A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *Koons Buick Pontiac GMC, Inc. v. Nigh,* 543 U.S. 50, 60 (2004) (quoting *United Sav. Assn. of Tex.,* 484 U.S. at 371) (internal citations omitted).

13

The Trustee apparently recognizes the problem imposed by depriving the Spouse of the income necessary to service his mortgage indebtedness and contends that the solution lies in the Debtor's ability to claim the mortgage payment as an expense on Form 122C-2.[20] The Trustee's solution, however, requires manipulating Form 122C-2 in a manner not envisioned by the Rules Committee that drafted the form.

Line 33 of Form 122C-2 is designated as the appropriate place on the form to include deductions for debt payments; however, in accordance with § 707(b)(2)(A)(iii), line 33 applies to debts "secured by an interest in property that you own . . . ." The Trustee's answer to the dilemma posed by the Debtor's lack of ownership of the collateral or liability for the debt is to ignore the language of § 707(b)(2)(A) and utilize line 43's deduction for "special circumstances" to recharacterize what is properly a marital adjustment as a deductible expense. Line 43 is not intended to include deductions otherwise addressed in Form 122C-2, particularly those involving payments on secured debts. Requiring the Debtor to complete the Form in the manner suggested by the Trustee for the sole purpose of designating the Debtor as above-median pursuant to § 1325(b)(3) is inappropriate.[21]

---

[20] "The trustee suggests these are valid expenses, but should not be taken as a marital adjustment, but rather are give [sic] on line 25 as a household expense, and any excess mortgage amount above the IRS [sic] should be provided on line 26. The vehicles and debt service should be on line 43 as other expenses." Memorandum in Support of Trustee's Objection to Plan (Docket 18 at 7).

[21] As always, § 1325(a)(3) and (7)'s requirements of good faith in both proposing a plan and filing the petition are available to enable the Court to deny confirmation of a debtor's plan in cases where abuse may be present. The Trustee has not alleged that the Debtor colluded

14

## Conclusion

The Debtor is entitled to claim the marital adjustment for the Spouse's mortgage payments on line 13 of Form 122C-1. The mortgage payments in this case are not an "expense" of the Debtor or the Debtor's dependent under § 101(10A)(B) because they represent "payments for debts" as described in § 707(b)(2)(A)(ii)(I). Alternatively, the court rejects the applicability of the household-centric approach in this case; even if the mortgage payments are considered an "expense" under § 101(10A)(B), they are not an "expense" of the debtor or the debtor's dependents." In light of the Debtor's concessions that Form 122C-1 includes improper marital adjustments, and for the foregoing reasons, the Court will sustain the Objection and deny confirmation of the Plan with leave to amend within 21 days. The Debtor is directed to amend Form 122C-1 within 14 days and, if the amendment so requires, simultaneously complete and file Form 122C-2.

A separate order will be entered.

Date: November 8, 2017                     /s/ Keith L. Phillips
                                    United States Bankruptcy Judge

ENTERED ON DOCKET: Nov. 8, 2017

Copies:

Marian Leah Baker
82554 Fourscore Drive
Mechanicsville, VA 23111

---

with her Spouse to obtain a result not contemplated by the Bankruptcy Code nor has he objected to confirmation for lack of good faith.

Jacqueline W. Sharman
Bowen Ten Cardani, P.C.
3957 Westerre Parkway Suite 105
Richmond, VA 23233

Susan Hope Call
Counsel to chapter 13 Trustee
P.O. Box 1819
Richmond, VA 23218